**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSH FEIERSTEIN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| CORREVIO PHARMA CORP., MARK H.N. CORRIGAN, WILLIAM HUNTER, and JUSTIN A. RENZ, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) ) |

1

Plaintiff Josh Feierstein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Correvio Pharma Corp. ("Correvio" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Correvio securities between October 23, 2018 and December 5, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Correvio was incorporated in 2018 in Canada and is headquartered in Vancouver, Canada.   Correvio is a specialty pharmaceutical company that engages in developing therapeutics worldwide.  The Company's portfolio of marketed brands comprise, among others,

vernakalant IV, or Brinavess, for the rapid conversion of recent onset atrial fibrillation ("AF") to sinus rhythm.

3.     Earlier during Brinavess's development, safety concerns led the U.S. Food and Drug Administration ("FDA") to decline approval for Brinavess after a patient with no apparent heart issues had died after being administered the drug during one of its clinical trials.  The FDA then mandated a clinical hold on the Brinavess program, which remains in effect in the U.S. Correvio's SEC filings would later characterize the patient death that precipitated the clinical hold as "a single unexpected serious adverse event of cardiogenic shock experienced by a patient with AF who received vernakalant (IV)."

4.     On October 23, 2018, Correvio announced its intention to resubmit a New Drug Application ("NDA") for Brinavess to the FDA for recent onset AF (the "Resubmitted NDA"), which followed additional purported safety data the Company had accumulated, as well as discussions with the FDA regarding the drug's potential regulatory path forward.  The Company later announced on July 25, 2019, that the FDA had accepted the Resubmitted NDA.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the data supporting the Resubmitted NDA for Brinavess did not minimize the significant health and safety issues observed in connection with the drug's original NDA; (ii) the foregoing substantially diminished the likelihood that the FDA would approve the Resubmitted NDA; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On December 6, 2019, FDA staffers reviewing Brinavess announced that they did not believe that the drug's benefits outweighed its risks.  Specifically, the FDA noted that Brinavess was associated with "serious liabilities" including low blood pressure, irregular heartbeats in the lower heart chambers, and death.

7.     On this news, Correvio's stock price fell $0.86 per share, or 39.81%, to close at $1.30 per share on December 6, 2019.

8.     Then, on December 10, 2019, during pre-market hours, the Nasdaq Stock Market ("NASDAQ") suspended trading in Correvio securities in anticipation of the FDA's Cardiovascular and Renal Drugs Advisory Committee's ("RDAC") review and discussion of the Resubmitted NDA.  Finally, just before market-close that day, the RDAC voted 11-2 against approval of the Resubmitted NDA, noting that Brinavess's benefit-risk profile was not adequate to support approval.

9.     Following this news, and after Correvio shares resumed trading on the NASDAQ, Correvio's stock price fell $0.94 per share, or 67%, to close at $0.46 per share on December 11, 2019, damaging investors.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Correvio securities trade on the NASDAQ, which is located within this Judicial District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Correvio securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Correvio is a Canadian corporation with principal executive offices located at 1441 Creekside Drive, 6th Floor, Vancouver, British Columbia, Canada V6J 4S7.  The Company's common shares trade on the NASDAQ under the ticker symbol "CORV."

17.     Defendant Mark H.N. Corrigan ("Corrigan"), M.D., has served as Correvio's Chief Executive Officer ("CEO") since March 2019.

18.     Defendant William Hunter ("Hunter"), M.D., served as Correvio's CEO since before the start of the Class Period until March 2019.

19.     Defendant Justin A. Renz ("Renz") has served as Correvio's Chief Financial Officer at all relevant times.

20.     Defendants Corrigan, Hunter, and Renz are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Correvio's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Correvio's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Correvio, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Correvio was incorporated in Canada in 2018 and is headquartered in Vancouver, Canada.   Correvio is a specialty pharmaceutical company that engages in developing therapeutics worldwide.   The Company's portfolio of marketed brands comprise, among others, vernakalant IV, or Brinavess, for the rapid conversion of recent onset AF to sinus rhythm.

23.     Earlier during Brinavess's regulatory development, safety concerns led the FDA to decline approval for Brinavess after a patient with no apparent heart issues had died after being administered the drug during one of its clinical trials.   The FDA then mandated a clinical hold on the Brinavess program, which remains in effect in the U.S.   Correvio's SEC filings would later characterize the patient death that precipitated the clinical hold as "a single

unexpected serious adverse event of cardiogenic shock experienced by a patient with AF who received vernakalant (IV)."

24. In 2013, Correvia received sponsorship of the NDA for Brinavess, after which Correvio began discussing next steps with the FDA for the development of the drug in the U.S. Following completion of additional nonclinical studies, Correvio proposed resubmission of the Brinavess NDA based on six years of purported accumulated safety data from sales of Brinavess in thirty-three countries, including interim results from over 1,100 patients enrolled in a post-authorization safety study ("PASS") conducted in Europe, referred to as SPECTRUM (PASS). The FDA's Cardiorenal Division disagreed that the Company's data supported NDA resubmission.

25. Later, in June 2018, after completing enrollment in a 2,000-patient PASS, Correvio requested a Type A meeting with the FDA, after which the FDA informed the Company that it could resubmit the Brinavess NDA.

**Materially False and Misleading Statements Issued During the Class Period[1]**

26. The Class Period begins on October 23, 2018, when Correvio issued a press release during pre-market hours announcing the Company's intention to move forward with the Resubmitted NDA (the "October 2018 Press Release"). According to that press release, the Company had decided to resubmit the Brinavess NDA "based on productive pre-NDA discussions" with the FDA. The October 2018 Press Release also quoted Defendant Hunter, who asserted that "[t]hese communications, including our recent pre-NDA meeting, represent a significant milestone for Correvio, since we have learned from the FDA that it would be permissible to resubmit the NDA with the clinical and post-marketing surveillance data that we

---

[1] All emphases added unless noted otherwise.

have already collected." Defendant Hunter also touted that Defendants were "pleased with the collaborative nature of the FDA discussions that clarified a path forward for resubmission of the Brinavess NDA in Q2 2019, and we look forward to working closely with the FDA during the review process."

27.     On March 13, 2019, Correvio filed an Annual Report on Form 40-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 40-F"). Appended as Exhibit 1.1 to the 2018 40-F was an Annual Information Form describing, among other aspects of the Company's business, a summary of Correvio's drug products and candidates (the "AIF"). The AIF touted the Company's 2,000-patient PASS conducted in the European Union "to characterize the normal use and dosing of the product, and to provide better estimates of the incidence of medically significant health outcomes of interest." Specifically, the AIF touted that "[z]ero deaths were reported and safety outcomes of interest were observed in 0.8% (95% confidence interval: 0.5% - 1.4%) of cases," thereby assuring investors that Brinavess was safe while simultaneously downplaying the hazardous risks it posed to patients. Similarly, the AIF also touted "results from a clinical survey assessing patients with acute AF in Belgian hospitals demonstrating reduced hospitalization in patients treated with BRINAVESS."

28.     Despite these assurances, the AIF contained merely generic, boilerplate representations concerning the "not necessarily predictive" nature of safety data from its prior clinical studies, despite being "primarily designed to test safety, to study pharmacokinetics and pharmacodynamics and to understand the side effects of product candidates at various doses and schedules." The AIF also contained boilerplate representations about risks related to the FDA's regulatory review process, stating, in relevant part:

In addition to the risk of unfavourable results of our research, because the data obtained from our pre-clinical and clinical activities are susceptible to varying interpretations, our successful completion of the regulatory process is uncertain. We may encounter delays, such as refusals from regulatory authorities to accept our marketing applications for review . . . . Unfavourable results from our clinical data may . . . limit our ability to obtain the regulatory approval required from the applicable regulatory authorities to commercialize our product candidates . . . . Delays in obtaining regulatory approvals would adversely affect the marketing of any products developed by us, impose significant additional costs on us, diminish any competitive advantages that we may otherwise have attained and adversely affect our ability to receive royalties and generate revenues and profits. Accordingly, despite our expenditures and investment of time and effort, we may be unable to receive required regulatory approvals for product candidates.

* * *

Administering any of our product candidates to humans may produce undesirable side effects. These side effects could interrupt, delay or halt clinical trials of our product candidates and could result in the applicable regulatory authorities denying approval of our product candidates for any or all of the targeted indications.

Plainly, the foregoing risk warning was a generic "catch-all" provision that was not tailored to Correvio's actual known risks with respect to the hazardousness of Brinavess.

29.     Appended as Exhibit 32.1 to the 2018 40-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Hunter and Renz certified that "[t]he [2018 40-F] fully complies with the requirements of section 13(a) or 15(d) of the [Exchange Act], as amended," and that "[t]he information contained in the [2018 40-F] fairly presents, in all material respects, the financial condition and results of operations of the [Company]."

30.     On June 24, 2019, Correvio issued a press release announcing its resubmission of the Brinavess NDA for the treatment of patients with recent onset AF to the FDA (the "June 2019 Press Release").  That press release cited a purportedly overwhelming body of evidence on Brinavess's safety profile that supported the Resubmitted NDA, touting that "[t]he NDA is supported by data from SPECTRUM, a post-approval safety study . . . which evaluated 1,778

unique patients across a total of 2,009 treatment episodes following administration of Brinavess," of which "[t]he cumulative incidence of health outcomes of interest (defined as significant hypotension, ventricular arrhythmia, atrial flutter, or bradycardia) were reported in 0.8% of patients"; "[t]wenty-eight serious adverse events were reported in 26 of the 1,778 patients and no deaths were reported in the study"; and that "[i]n addition to SPECTRUM, the Brinavess NDA is also supported by nine Phase 3 and Phase 2 clinical trials and over eight years of real-world experience in approximately 50,000 treatment patients worldwide."

31.     The June 2019 Press Release also quoted Defendant Corrigan, who asserted that "[t]he resubmission of the Brinavess NDA is a major milestone for Correvio and is the culmination of substantial effort by our employees and the investigators who have dedicated themselves toward investigating this potential new treatment option for adult patients with recent onset AF."   Defendant Corrigan also touted that, "[i]f approved, [Defendants] believe that Brinavess will be an attractive addition to the AF treatment landscape and **will provide physicians with a well tolerated** and effective pharmacologic treatment approach to cardioversion."   Finally, Corrigan cited the "the FDA's willingness to work with [Defendants] during the resubmission process" and assured investors that Defendants "look forward to working closely with the FDA as they review the new data **supporting the safety and efficacy of Brinavess**."

32.     On July 25, 2019, Correvio issued a press release announcing the FDA's acceptance of the Resubmitted NDA, an assigned target action date of December 24, 2019, and the FDA's plan to hold an advisory committee meeting to discuss the Resubmitted NDA.   That press release contained substantively identical statements to those contained in the June 2019 Press Release concerning the body of evidence supporting Brinavess's safety profile and the

Resubmitted NDA.  It also quoted Defendant Corrigan, who asserted that "[t]he FDA's acceptance of this resubmitted NDA marks another important milestone for Correvio and for the global Brinavess program," and that, "[a]s a potential new AF treatment, **with a well-characterized** efficacy and **safety profile**, [Defendants] believe that Brinavess, if approved, will be an attractive addition to the AF treatment landscape."

33.     On September 3, 2019, Correvio issued a press release announcing a presentation of Brinavess SPECTRUM data at the European Society of Cardiology 2019 Congress (the "September 2019 Press Release").  That press release touted that the SPECTRUM trial (supporting the Resubmitted NDA) was a "prospective and retrospective, international, multicenter, observational registry, [where] 1,778 unique patients with 2,009 treatment episodes were enrolled to describe patients receiving Brinavess and to characterize normal conditions of use and dosing, and quantify possible medically significant risks associated with the use of Brinavess in real-world clinical practice."  It also touted that "[i]n the safety results, a total of 19 health outcomes of interest ('HOIs', defined as significant hypotension, significant ventricular arrhythmia, atrial flutter with 1:1 conduction, or significant bradycardia) were reported in 17 of the 1778 patients enrolled (<1%)"; that "[t]he cumulative incidence of HOIs at study completion was 0.8% (95% CI: 0.5%-1.4%)"; and that only "[t]wenty-eight serious adverse events (SAEs, including the 19 HOIs) were reported for 26 patients," with "no cases of torsades de pointes, ventricular fibrillation or deaths . . . reported in the study," thereby further assuring investors of Brinavess's safety profile.

34.     The September 2019 Press Release also quoted Juha Hartikainen, M.D., Cardiologist and Professor of Medicine, Kuopio University Hospital, and co-author of the

presentation, who touted that, "[i]mportantly, Brinavess may provide rapid cardioversion without the need of anesthesia."

35.     Finally, on November 18, 2019, Correvio issued a press release announcing the presentation of new Brivaness SPECTRUM data at the American Heart Association 2019 Annual Meeting (the "November 2019 Press Release").  That press release touted that "[o]nly 13% of . . . emergency department patients" treated during the SPECTRUM trial "remained in hospital for greater than 24 hours"; that, "[i]n the safety results, there were a total of 12 serious adverse events (SAEs) of special interest in 11 patients (0.9%; 95% CI 0.4-1.5%), the most common of which was significant bradycardia (n=9, 0.7%), one of which was associated with significant hypotension (0.1%)," and "two 1:1 atrial flutter (0.2%), one of which was originally differentially evaluated as sustained ventricular tachycardia"; and that "[n]o serious Brinavess-related [adverse events] resulted in clinical sequelae and no deaths nor cases of torsades de pointes were reported in the study."

36.     The November 2019 Press Release also quoted Carin Heringa, MD, Correvio's Head of Medical Affairs, who assured investors that, "[i]n the emergency department setting, cardioversion of recent onset AF with vernakalant had a *low rate of SAEs of special interest* and was highly effective"; that "[t]he results from this cohort of the SPECTRUM registry are *consistent with the overall SPECTRUM results* and s*upport the use of vernakalant as a first line option in appropriate patients*"; and that Brinavess "potentially allow[s] early discharge and *lower hospitalization rates*."

37.     The statements referenced in ¶¶ 26-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.

Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the data supporting the Resubmitted NDA for Brinavess did not minimize the significant health and safety issues observed in connection with the drug's original NDA; (ii) the foregoing substantially diminished the likelihood that the FDA would approve the Resubmitted NDA; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

38.     On December 6, 2019, less than a month after Correvio issued the November 2019 Press Release, FDA staffers reviewing Brinavess announced that they did not believe that the drug's benefits outweighed its risks.  Specifically, the FDA noted that Brinavess was associated with "serious liabilities" including low blood pressure, irregular heartbeats in the lower heart chambers, and death.

39.     On this news, Correvio's stock price fell $0.86 per share, or 39.81%, to close at $1.30 per share on December 6, 2019.

40.     Then, on December 10, 2019, during pre-market hours, the NASDAQ suspended trading in Correvio securities in anticipation of the RDAC's review and discussion of the Resubmitted NDA.  Finally, just before market-close that day, the RDAC voted 11-2 against approval of the Resubmitted NDA, noting that Brinavess's benefit-risk profile was not adequate to support approval.

41.     Following this news, and after Correvio shares resumed trading on the NASDAQ, the Company's stock price fell $0.94 per share, or 67%, to close at $0.46 per share on December 11, 2019, damaging investors.

42. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Correvio securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Correvio securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Correvio or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Correvio;

- whether the Individual Defendants caused Correvio to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Correvio securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Correvio securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Correvio securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

52.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Correvio securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Correvio securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Correvio securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Correvio's finances and business prospects.

56.     By virtue of their positions at Correvio, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Correvio, the Individual Defendants had knowledge of the details of Correvio's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Correvio.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Correvio's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Correvio securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Correvio's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or

otherwise acquired Correvio securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.     During the Class Period, Correvio securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Correvio securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Correvio securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Correvio securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of Correvio, and conducted and participated, directly and indirectly, in the conduct of Correvio's business affairs.  Because of their senior positions, they knew the adverse non-public information about Correvio's misstatement of income and expenses and false financial statements.

64.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Correvio's financial condition and results of operations, and to correct promptly any public statements issued by Correvio which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Correvio disseminated in the marketplace during the Class Period concerning Correvio's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Correvio to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Correvio within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Correvio securities.

66.     Each of the Individual Defendants, therefore, acted as a controlling person of Correvio.  By reason of their senior management positions and/or being directors of Correvio, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Correvio to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Correvio and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

67.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Correvio.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 12, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Joshua L. Feierstein_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Correvio Pharma Corporation ("Correvio" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Correvio securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a class of investors who purchased or acquired Correvio securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Correvio securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___12/11/2019___
             **(Date)**

_____
             **(Signature)**

Joshua Feierstein
_____
             **(Type or Print Name)**

**Correvio Pharma Corporation (CORV)**                               **Feierstein, Joshua L.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 11/27/2019 | Purchase | 400 | $2.2500 |
| 12/4/2019 | Purchase | 825 | $2.0100 |