UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSH FEIERSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>    vs.<br><br>CORREVIO PHARMA CORP., MARK H.N. CORRIGAN, WILLIAM HUNTER, JUSTIN A. RENZ, and SHEILA M. GRANT,<br><br>                      Defendants. | Case No.: 1:19-CV-11361-VEC<br><br>Honorable Valerie E. Caproni |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
<u>APPROVAL OF DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

NATURE OF THE ACTION ............................................................................................ 3

PROCEDURAL HISTORY............................................................................................... 3

    A.    The Initial Complaint And Lead Appointment .......................................... 3

    B.    The Proposed Settlement ........................................................................... 4

STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ................................. 5

    A.    Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval .................................................................. 5

    B.    A Settlement Should Be Preliminarily Approved If It Is Procedurally And Substantively Fair ................................................................................... 7

    C.    Public Policy Favors Settlement Of Securities Class Actions ............................ 8

ARGUMENT ................................................................................................................ 8

    A.    The Proposed Settlement Warrants Preliminary Approval .................................. 8

        1.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors 8

            a.    Lead Plaintiffs And Lead Counsel Adequately Represented The Class ................................................................................... 9

            b.    The Settlement Is The Result Of Good Faith, Arm's Length Negotiations Conducted By Well-Informed And Experienced Counsel ................................................................................. 9

            c.    The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation................................................................................ 10

            d.    The Settlement Treats All Members Of The Class Equitably ...... 16

            e.    The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ............................................................ 16

    B.    Certification Of The Settlement Class For Settlement Purposes Is Appropriate. 18

        1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) ........... 18

            a.    Numerosity.................................................................................. 19

            b.    Commonality............................................................................... 19

            c.    Typicality .................................................................................... 20

            d.    Adequacy .................................................................................... 21

i

2.      Common Questions Predominate And A Class Action Is The Superior Method Of Adjudication .............................................................................. 22

3.      The Court Should Approve The Form Of Notice And  Notice Schedule . 23

PROPOSED SCHEDULE OF SETTLEMENT EVENTS ........................................................... 24

CONCLUSION.......................................................................................................................... 25

## TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................ 18, 22, 23

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 13

*Athale v. Sinotech Energy Ltd.*,
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ........................................................................ 23

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................................ 20

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir.2010) .................................................................................................... 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) .............................................................................................. 19, 20

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017) ........................................................................ 21

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) .............................................................................................. 8

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ...................................................................................................... 19

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................................................... 10

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .................................................................................................... 18

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................ 12

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ............................................................................ 12

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
  925 F.3d 63 (2d Cir.) ............................................................................................................... 15

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................................................................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014).............................................................................. 18, 24

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984)........................................................................... 10, 17

*In re Altair Nanotechnologies Sec. Litig.*,
  2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016).................................................................. 14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013)..................................................................................... 5

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..................................................................... 16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ............................................................................ 24

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).................................................................. 13

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013)..................................................................................... 5

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................... 10, 16

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992).......................................................................................... 21

*In re Giant Interactive Grp., Inc.*,
  279 F.R.D. 151 (S.D.N.Y. 2011)................................................................................... 18

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)............................................................... 17

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)................................................................................... 17

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012)........................................................................... 8, 14, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................ 17

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................... 8, 19, 22

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................... 16

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................. 17

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010) ......................................................... 24

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................... 5

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................... 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................. 6, 7

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ..................................................................... 20

*In re Platinum & Palladium Commodities Litig.*,
  2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..................................................... 7, 8

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................ 19, 20, 21

*In re Sanofi-Aventis Sec. Litig.*,
  293 F.R.D. 449 (S.D.N.Y. 2013) .................................................................... 22

*In re Stock Exchs. Options Trading Antitrust Litig.*,
  2005 WL 1635158 (S.D.N.Y. July 8, 2005) ......................................................... 5

*In re Take Two Interactive Sec. Litig.*,
  2010 WL 11613684 (S.D.N.Y. June 29, 2010) ..................................................... 16

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 17

*Joel A. v. Giuliani,*
   218 F.3d 132 (2d Cir. 2000) ............................................................................. 10

*Kalnit v. Eichler,*
   99 F. Supp. 2d 327 (S.D.N.Y. 2000) .................................................................. 12

*Marsh & McLennan,*
   2009 WL 5178546 ........................................................................... 18, 20, 22

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
   2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016) ...................................................... 19

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ............................................................................. 17

*Robbins v. Koger Props., Inc.,*
   116 F.3d 1441 (11th Cir. 1997) ........................................................................ 13

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993) ............................................................................. 19

*Shapiro v. JPMorgan Chase & Co.,*
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................................... 21

*Thomas v. MagnaChip Semiconductor Corp.,*
   2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ............................................................................ 8, 10

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ............................................................................... 18

*Wilson v. LSB Indus., Inc.,*
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .................................................... 23

## RULES

Fed. R. Civ. P. 23 ........................................................................................... *passim*

OTHER AUTHORITIES

*Manual for Complex Litigation* (Third), § 30.42 (1995) ................................................................. 10

*Newberg on Class Actions* § 11:25 (4th ed. 2002).......................................................................... 6

Lead Plaintiffs Clinton Atkinson, Nabil Saad, and Iuliia Mironova ("Lead Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement (the "Settlement") of the above-captioned action (the "Action") embodied in the Stipulation and Agreement of Settlement dated September 3, 2020 (the "Stipulation")[1] filed concurrently herewith. Lead Plaintiffs ask the Court to enter an order preliminarily approving the proposed class action settlement (the "Preliminary Approval Order"). The Preliminary Approval Order will: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class.[2] appoint Lead Plaintiffs as class representatives and Lead Counsel as class counsel for settlement purposes; (iii) approve the form and manner of Notice of the Settlement to the Settlement Class; and (iv) schedule a final approval hearing ("Final Approval Hearing" or "Settlement Hearing") at which the Court will, among other things, consider final approval of the Settlement.

**PRELIMINARY STATEMENT**

The proposed Settlement will resolve all claims against Defendants in exchange for a cash payment of $1,750,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 5.01—8.14% of the potential maximum recoverable damages, which is well-within the range of reasonableness given the risks of continued litigation.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Laurence Rosen ("Rosen Declaration"), which is filed concurrently herewith.

[2] The "Settlement Class" or "Class" is defined as all persons and entities who or which purchased or otherwise acquired shares of Correvio stock between September 5, 2018 and December 10, 2019, inclusive (the "Settlement Class Period") and were damaged thereby. Excluded from the Settlement Class are: (i) the Defendants; (ii) members of the Immediate Family of each of the Individual Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) the officers and directors of Correvio during the Settlement Class Period; and (v) the legal representatives, heirs, successors or assigns of any such excluded party.

1

By the time the Settlement was reached, Lead Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Indeed, prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, (a) a review and analysis of Correvio Pharma Corporation's ("Correvio" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), the Defendants' public statements, news articles concerning Correvio, analyst reports, and transcripts of Correvio's investor calls, (b) working with a private investigator to identify and conduct numerous interviews with former employees and other potential witnesses with relevant information, and (c) consultation with damages and FDA experts; (ii) drafted the 96-page Amended Class Action Complaint (the "Complaint"), based on the investigation; (iii) reviewed and analyzed Defendants' motion to dismiss the Complaint; and (iv) engaged in negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel.

To approve the Settlement, the Court must ultimately determine that it is fair, reasonable, and adequate. The Settlement meets these requirements. At this point, however, the question is not whether to approve the Settlement, but whether the Settlement might be approved, a standard the Settlement plainly satisfies. While Lead Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability and damages. Given these issues, the $1,750,000 recovery is an excellent resolution of this litigation, and it is in the best interests of the Settlement Class.

Because all of the requirements for class certification approval are met, the Court should certify the Class for settlement purposes only. Further, because the Plan of Allocation is fair,

reasonable and adequate, it should be preliminarily approved.  Finally, the Court should approve the Notice, and should schedule a final approval hearing to determine whether the proposed Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses (including awards to Lead Plaintiffs pursuant to the Private Litigation Reform Act of 1995), should be approved.

## NATURE OF THE ACTION

This is a securities class action brought by investors alleging, *inter alia*, that defendants Correvio, Mark H.N. Corrigan ("Corrigan"), William Hunter ("Hunter"), Justin A. Renz ("Renz"), and Sheila M. Grant ("Grant") (collectively, the "Defendants")[3] violated Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by making false and misleading statements regarding Correvio's post authorization safety study called "SPECTRUM."  Specifically, the Complaint alleges that Defendants misled investors into believing that Correvio's SPECTRUM study would support FDA approval of the Company's resubmitted new drug application for a drug called "Brinavess," when in fact Defendants were aware that Correvio's safety study suffered from numerous defects that substantially diminished the likelihood of FDA approval.  As a result of Defendants' false and misleading statements, Lead Plaintiffs allege that the prices of Correvio's publicly-traded securities were artificially inflated and declined when the truth was revealed.

## PROCEDURAL HISTORY

### A.    The Initial Complaint And Lead Appointment

On December 12, 2019, Josh Feierstein filed the initial complaint in this action.  On February 10, 2020 Lead Plaintiffs and three other groups of movants each filed motions for

---

[3]  Defendants Corrigan, Hunter, Renz, and Grant are collectively referred to herein as the "Individual Defendants."

appointment as lead plaintiff and approval of counsel.  On February 25, 2020, the Court appointed Clinton Atkinson, Nabil Saad, and Iuliia Mironova as Lead Plaintiffs for the Action; and appointed the Rosen Law Firm, P.A., to serve as Lead Counsel.  Dkt. 29.[4]

On May 1, 2020, Lead Plaintiffs filed the amended complaint  ("Complaint").  Dkt. 40. On June 30, 2020, Defendants filed their motion to dismiss the Complaint.  Dkts. 48-50.  On July 17, 2020, the Court granted the Parties' request to extend the briefing schedule for Lead Plaintiffs' response to the motion to dismiss and Defendants' reply thereto.  Dkt. 51.

After Lead Plaintiffs filed the Complaint, Lead Counsel and Defendants' Counsel engaged in informal settlement discussions.  The informal discussions culminated in the Parties reaching of an agreement in principle to settle the Action that the Parties memorialized in a memorandum of understanding (the "MOU") executed on July 13, 2020.  Following further negotiations, the Parties executed the Stipulation on September 3, 2020.

### B.    The Proposed Settlement

The proposed Settlement consists of $1,750,000 in cash (the "Settlement Amount") to be paid by Correvio and its insurer(s) on behalf of the Defendants.  The Settlement Amount will be deposited into an interest-bearing escrow account within twenty business days following the Court's entry of the Preliminary Approval Order (with any interest or other income earned thereon, the "Settlement Fund").  The Settlement Fund shall be used to pay any Administrative Costs, Taxes and Tax Expenses, and attorney's fees and Litigation Expenses as approved by the Court, with the balance of the Settlement Fund to be distributed to Authorized Claimants.  In

---

[4]  Prior to their appointment as Lead Plaintiffs, Nabil Saad and Iuliia Minrova were represented by Glancy Prongay and Murray LLP ("GPM").  The Court declined to appoint GPM as co-lead counsel.  Subsequent to the Court's order appointing the Rosen Law Firm as Lead Counsel, GPM performed work on the case under the supervision and direction of Lead Counsel.  Lead Counsel ensured that no work was duplicated. Further, neither Lead Counsel nor GPM incurred any travel costs, and Lead Counsel ensured that no unnecessary costs were incurred.

return, the Settlement provides that Lead Plaintiffs and the Settlement Class will release all Released Plaintiffs' Claims against Defendants..

Lead Counsel intend to move for an award of attorney's fees of up to $437,500 (twenty five percent of the Settlement Amount) plus interest, and reimbursement of no more than $60,000 in litigation expenses.  Lead Counsel also intend to request reimbursement for Lead Plaintiffs' costs and expenses, collectively not to exceed $3,000 ($1,000 each).

### STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

**A.      Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[5]  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Thus, "[p]reliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).   "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The purpose of the preliminary evaluation is to identify "terms [that] are unacceptable at the

---

[5]  Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

outset," and which would render "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." *Newberg on Class Actions* § 11:25 (4th ed. 2002).

Rule 23(e)(2), in turn, sets forth criteria for determining final approval.  In evaluating final approval of a settlement, district courts within the Second Circuit "have traditionally considered nine factors, known as the *Grinnell* factors": (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Recent amendments to Rule 23(3)(2)—governing final approval—now require courts to consider the following factors as well:

(A)   have the class representatives and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

  (i)   the costs, risks, and delay of trial and appeal;

  (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   does the proposal treat class members equitable relative to each other.

6

These new factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Antitrust Litig.*, 330 F.R.D. at 29. As discussed herein, the proposed Settlement merits preliminary approval and the Court should approve the Parties' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise Class Members of the terms of the Settlement and give them adequate opportunity to file claims, submit objections to, or exclude themselves from, the Settlement.

> **B.    A Settlement Should Be Preliminarily Approved If It Is Procedurally And Substantively Fair**

In determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rules 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Id.* However, the court cannot "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—may be premature at this stage. *See id.*

Thus, in conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e*., procedural fairness, as well as the settlement's substantive terms, *i.e*., substantive fairness.'" *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval,

preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at \*11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

### C.    Public Policy Favors Settlement Of Securities Class Actions

"The decision to grant or deny such approval lies squarely within the discretion of the trial court, and this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"). This strong judicial policy equally applies here.

### ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

At this stage, courts undertake a preliminary review of the Rule 23(e)(2) factors in determining that the Settlement merits granting preliminary approval and directing notice of the Settlement to be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the relief to the Class is adequate; and (d) the Settlement

8

treats Class Members equitably relative to each other.  Fed. R. Civ. P. 23(3)(2)(A)-(D); *see also supra* Section IV.A.

Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to preliminarily consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### a.    Lead Plaintiffs And Lead Counsel Adequately Represented The Class

Lead Plaintiffs and Lead Counsel have adequately represented the interests of absent Class Members for purposes of Rule 23(e)(2)(A).  Lead Plaintiffs and Lead Counsel thoroughly investigated the allegations in the Complaint.  The investigation included, among other things, an extensive review and analysis of: (1) all relevant Correvio filings with the SEC; (2) Correvio's other public statements, including press releases and transcripts of Correvio's investor calls; (3) reports of securities and financial analysts; and (4) news articles and other commentary and analysis regarding Correvio.  Lead Counsel also consulted with FDA and damages experts and worked with a private investigator who interviewed former employees and other witnesses with potentially relevant information.  In addition to Lead Counsel's factual investigation, Lead Counsel prepared the 96-page Complaint, skillfully negotiated the terms of the proposed Settlement and negotiated and drafted the Stipulation and exhibits.

### b.    The Settlement Is The Result Of Good Faith, Arm's Length Negotiations Conducted By Well-Informed And Experienced Counsel

The Settlement is entitled to a presumption of fairness, as it is the product of arm's-length

negotiations between counsel with substantial experienced litigating securities class action lawsuits. *Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation* (Third), § 30.42 (1995)); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013).

Here, the arm's-length negotiations took place between parties knowledgeable about the case and the applicable law. Lead Plaintiffs were represented by nationally-recognized law firms experienced in securities litigation and class actions. *See* Rosen Declaration, Exs. 2 & 3. Defendants are likewise represented by counsel with substantial class action securities litigation experienced. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (affirming settlement negotiated by plaintiffs' counsel that were "extremely experienced" litigators in their field); *Joel A. v. Giuliani*, 218 F.3d 132, 137 (2d Cir. 2000) (affirming settlement negotiated by experienced litigators).

**c.      The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $1,750,000 for the benefit of the Settlement Class. This is an excellent result in light of the significant risks of continued litigation. According to Lead Plaintiffs' damages expert, if Lead Plaintiffs overcame all of the obstacles to establishing liability, and completely prevailed on all of their loss causation and

10

damages theories, the $1.75 million settlement would equate to approximately 5.01% of the total *maximum* damages *potentially* available in this Action. However, Defendants could have raised credible arguments with respect to confounding information on each of the disclosure dates. Assuming, *arguendo*, this information accounted for 50% of the December 6, 1019 corrective disclosure, and 70% of December 10, 2019 corrective disclosure, maximum provable damages would have been reduced to $21.5 million, in which case the settlement equates to an 8.14% recovery. In comparison, in 2019, the median settlement value for securities class actions was approximately 2.1% of estimated damages. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 12, 2020) at p. 20 (Fig. 13).[6] Thus, the recovery provided for in the Settlement exceeds the median recovery realized in similar cases in 2019.

### i.      Risks Of Proving Liability

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed the very real risk that *no* recovery, or a substantially lesser recovery, might only be achieved after the motion to dismiss, summary judgment, class certification, trial, and any appeals, which would take many additional years.

If the Action were to proceed through the motion to dismiss on to summary judgment and trial, Lead Plaintiffs would have to continue to overcome substantial defenses asserted by Defendants as to both liability and damages. Indeed, Defendants have vigorously contested their liability for securities fraud. For example, Defendants strenuously argued, and would continue to

---

[6] *Available at*
https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_Trends_012120_Final.pdf

argue, that their challenged statements were not false or misleading, and are unactionable opinions. Defendants further argued that all the challenged statements were not actionable because all material information regarding the SPECTRUM study was disclosed to investors.

Further, Defendants would have continued to argue that even if Lead Plaintiffs could establish a material misstatement or omission, there was no evidence upon which Lead Plaintiffs could prove the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09-cv-628, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants are adamant that they had no intent to deceive.

Lead Plaintiffs would also have confronted considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). While Lead Plaintiffs would have argued that the declines in Correvio's stock price were attributable to corrections of the alleged misstatements and omissions concerning Correvio's SPECTRUM study, Defendants would have asserted that much of the decline was due to other negative news, and that even if some portion of the decline in Correvio's stock price was caused by corrective disclosures, damages were minimal.

If Defendants were to prevail on any of their anticipated loss causation arguments, the amount of potentially recoverable damages would be severely reduced. And even if Lead

12

Plaintiffs overcame all of these significant risks and prevailed at trial, such a victory would not have guaranteed the Class an ultimate recovery larger than the $1,750,000 Settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

In sum, the Parties disagreed on numerous complex issues of fact and law. While Lead Plaintiffs and Lead Counsel believe that this case has substantial merit and that they could successfully counter each of Defendants' arguments, it is nevertheless true that Defendants had serious defenses that, if successful, would have resulted in the Settlement Class recovering *far less* than the proposed Settlement, *or nothing at all*. In the context of these risks, Lead Plaintiffs and Lead Counsel believe that the $1.75 million Settlement is an excellent result for the Class and respectfully submit that preliminary approval is appropriate.

### ii.    Other Factors Established By Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors

supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, after Court approval, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation). SCS is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *In re Altair Nanotechnologies Sec. Litig.*, No. 14 CIV. 7828 (AT), 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (appointing SCS "to supervise and administer the notice procedure as well as the processing of claims"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184 (S.D.N.Y. 2012) ("In accordance with our direction, lead plaintiff's counsel retained [SCS] to supervise and administer the dissemination of the notice").

Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

Second, as disclosed in the Notices, Lead Counsel and additional Plaintiffs' Counsel, GPM, will be applying for a percentage of the common fund fee award in an amount not to exceed 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) to compensate them for the services they have rendered on behalf of the Settlement Class.  The identification of all attorneys from the Rosen Law Firm and GPM, the fair approximation of the number of hours each of those attorneys devoted to the case, and their respective billing rates are included in the charts attached to the Rosen Declaration.  *See* Rosen Declaration., Exs. 4-5.

A proposed attorneys' fee of up to 25% of the Settlement Fund is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex securities class action cases.  *See Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 66 (2d Cir.), *cert. denied*, 140 S. Ct. 385 (2019) (affirming percentage method and Lead Counsel's award of attorneys' fees of 25% of the settlement fund plus interest).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶16.

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Correvio common stock request exclusion (or "opt out") from the Settlement.  Such confidential supplemental agreements are customary in settlements and "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST,

15

2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same); *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *11–*12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

### d.    The Settlement Treats All Members Of The Class Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006).

### e.    The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the new factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

First, the fact that there has been no formal discovery in this case does not weigh against preliminary approval.  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]").

A defendant's ability to withstand a judgment greater than that secured by settlement, generally, is not one of the determining factors.  *See In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'").  Here, "the settlement was not driven by any concern about [Correvio's] ability to pay.  Under these circumstances, ability to pay is not a factor in the settlement, and does not weigh either for or against approval." *MetLife,* 689 F. Supp. 2d at 340; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008).

Finally, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*,

17

No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).  As discussed above, in light of the risks of continued litigation, the Settlement clearly falls within the range of reasonableness.

### B.  Certification Of The Settlement Class For Settlement Purposes Is  Appropriate

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *Marsh & McLennan*, 2009 WL 5178546, at *8.  Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (quoting *In re Giant Interactive Grp., Inc.,* 279 F.R.D. 151, 158 (S.D.N.Y. 2011)).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b).  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3).

### 1.    The Settlement Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

18

class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable means "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although the "[d]etermination of practicability depends on all circumstances, not on mere numbers," *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), "[i]n the Second Circuit, a proposed class of more than forty members presumptively satisfies the numerosity requirement." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-CV-5310 (DAB), 2016 WL 7409840, at *2 (S.D.N.Y. Nov. 4, 2016) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Further, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

As of March 13, 2019, there were 36,233,162 shares of Correvio common stock outstanding. Given the volume of shares outstanding, it is likely there are hundreds or thousands of class members, satisfying the numerosity requirement.

### b.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A single common question may be sufficient to satisfy the commonality requirement." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84–85 (S.D.N.Y. 2007)

19

(citation omitted).  In securities actions, "common questions of law and fact are present" as "the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public. . . *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (citation omitted).

In this case, there are common questions of law and fact relating to whether Defendants' statements and omissions were "materially misleading," whether Plaintiffs sustained damages, and if so, the proper measure of damages.  Thus, there are question of law and fact  common to the proposed class,

### c.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007); *accord Pfizer*, 282 F.R.D. at 44; *Sadia*, 269 F.R.D. at 304-05.  "Typical" does not mean "identical." *Marsh & McLennan*, 2009 WL 5178546, at *10.  The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by Defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id*.

Lead Plaintiffs alleged a common course of unlawful conduct affecting them and all other Settlement Class Members.  Lead Plaintiffs, and each Settlement Class Members purchased Correvio securities in reliance upon the same alleged misrepresentations and omissions that

20

Correvio made to the investing public during the Settlement Class Period. Thus, Plaintiffs' and the Settlement Class' interests align and the typicality requirement is satisfied.

### d. Adequacy

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative party is adequate if: (i) there are no conflicts of interests between the plaintiffs and members of the class; and (ii) their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014); *Sadia*, 269 F.R.D. at 305. Both prongs of the adequacy test are met.

Lead Plaintiffs' interests do not conflict in any way with those of the Settlement Class. Lead Plaintiffs and the Settlement Class Members all purchased Correvio Securities during the Settlement Class Period and were injured by the same alleged material false statements and omissions.

Lead Counsel and additional Plaintiffs' Counsel are experienced and capable of prosecuting this action on behalf of the Settlement Class. *See* Rosen Declaration, Exs. 2-3 (Rosen and GPM firm resumes). Accordingly, Rule 23(a)(4) is satisfied.

Lead Counsel also satisfy Rule 23(g)'s adequacy requirements. In assessing proposed class counsel's adequacy, a court must consider the following: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CIV-0256-LAK-AJP, 2017 WL 3608298, at *7 (S.D.N.Y. Aug. 22, 2017).

21

The Rosen Law Firm, P.A. was appointed Lead Counsel (*see* Dkt. 29), and Lead Counsel, along with additional Plaintiffs' Counsel, GPM, have done considerable work identifying and investigating the claims in the Action, conducting an exhaustive factual investigation, filing the 96-page Complaint, and negotiating the Settlement.   The Rosen Law Firm, along with GPM, have also devoted substantial time, effort, and resources to the prosecution of this Action. Accordingly, Lead Plaintiffs have satisfied Rule 23(a)(4), Lead Counsel have satisfied Rule 23(g), and they respectfully request appointment as Class Representatives and Class Counsel, respectively, for purposes of Settlement.

### 2.   Common Questions Predominate And A Class Action Is The Superior Method Of Adjudication

In certifying a class, the court must also consider whether the proposed class meets one of the requirements of Rule 23(b).   *In re Initial Pub. Offering*, 243 F.R.D. at 84.   Here, the Settlement Class satisfies the requirements of Rule 23(b)(3) in that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Courts generally focus on the liability issue in deciding whether the predominance requirement is met," *In re Marsh & McLennan,* 2009 WL 5178546, at *11, and as noted by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).   In this case, the common question of whether Defendants made false and misleading statements predominates.   *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (whether Defendants' statements were materially misleading to a reasonable investor is an issue "subject to generalized proof, and thus applicable to the class as a whole") (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d

22

Cir.2010)); *Athale v. Sinotech Energy Ltd.*, No. 11 CIV. 05831 (AJN), 2013 WL 11310686, at *3 (S.D.N.Y. Sept. 4, 2013).   Rule 23(b)(3) is satisfied because the Class's claims depend on demonstrating and proving the various and complex alleged violations of the Securities Act and the Exchange Act.

For the superiority analysis, Rule 23(b)(3) considers the following factors relevant: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[8]  *Wilson v. LSB Indus., Inc.*, No. 15-CIV-7614-RA-GWG, 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018).   Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is unlikely that most Settlement Class Members would be able to obtain relief without class status.   Further, any Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.

Accordingly, the proposed Settlement Class meets all of the requirements of Rule 23(b)(3) and Rule 23(a) and the Court should certify the Settlement Class for settlement purposes only.

### 3.    The Court Should Approve The Form Of Notice And  Notice Schedule

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Postcard Notice (Exhibit A-4 to the Preliminary

---

[8]  This is a settlement in lieu of a trial, so the Rule 23(b)(3)(D) inquiry is not required.  *See Amchem Products, Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

Approval Order) to Settlement Class Members who can be identified through reasonable effort, the Summary Notice will be published once in the national edition of *Investor's Business Daily* and once over a national newswire service; and the court-appointed Claims Administrator, SCS,[9] will maintain a website, which will be listed in both the Postcard Notice and Summary Notice, where the Internet Long Form Notice and Proof of Claim form will be posted, along with other information that Settlement Class Members may find useful and relevant to the litigation, the Settlement, and their claims decisions.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

Accordingly, the form, content, and methods of dissemination of the Notice meet all of the requirements of due process, the Exchange Act, and the Federal Rules of Civil Procedure.

### PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully request that the Court approve the following proposed schedule for finalizing the Settlement.

---

[9] Plaintiffs request that the Court approve retention of SCS as the claims administrator for this case, which is an experienced claims administrator with significant experience administering securities settlements.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶26) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶16) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶26) | 7 calendar days prior to the Settlement Fairness Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | To be determined by the Court. Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (1) certify the Settlement Class for the purpose of settlement only, appoint Lead Plaintiffs as Class Representatives and Lead Counsel and Class Counsel; (2) preliminary approve the proposed Settlement; (3) approve the proposed form and manner of notice and schedule for finalizing Settlement; and (4) schedule a final Settlement Hearing.

DATED:    New York, New York
September 3, 2020        **THE ROSEN LAW FIRM, P.A.**


By: *s/ Laurence Rosen*
Laurence Rosen
Sara Fuks
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
lrosen@rosenlegal.com
sfuks@rosenlegal.com

*Lead Counsel for Lead Plaintiffs and the proposed Settlement Class*

Kara M. Wolke
Jennifer M. Leinbach
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
kwolke@glancylaw.com
jleinbach@glancylaw.com

*Additional Counsel for Lead Plaintiffs and the proposed Settlement Class*

26