UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSH FEIERSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORREVIO PHARMA CORP., MARK H.N. CORRIGAN, WILLIAM HUNTER, JUSTIN A. RENZ, and SHEILA M. GRANT,<br><br>Defendants. | Case No.: 1:19-CV-11361-VEC<br><br>Honorable Valerie E. Caproni |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION <u>EXPENSES</u>**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY .................................................................. 2

III. ARGUMENT................................................................................................................... 3

    A.   The Common Fund Doctrine Applies to the Settlement ................................... 3

    B.   The Court Should Award a Reasonable Percentage of the Common Fund.... 4

    C.   The Requested Attorneys' Fees Are Reasonable ............................................. 6

        1.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method.................................................................................... 6

        2.   The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ...................................................................................... 9

    D.   Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable ................................................................. 11

        1.   Time and Labor Expended Support the Requested Fee ...................... 11

        2.   The Risks of Litigation Support the Requested Fee ........................... 13

        3.   The Magnitude and Complexity of the Action Support the Requested Fee...................................................................................................... 17

        4.   The Quality of Lead Counsel's Representation Supports the Requested Fee...................................................................................................... 19

        5.   The Requested Fee in Relation to the Settlement Amount ................. 20

        6.   Public Policy Considerations Support the Requested Fee .................. 20

        7.   The Reaction of the Class to Date Supports the Requested Fee ......... 21

    E.   Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .......................................................................... 22

    F.   Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)........................................................................ 23

IV.  CONCLUSION ............................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................ 2

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..................................................................................... 17

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................................................. 7

*Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................... 14

*Asare v. Change Group of New York, Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ............................................................ 11

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ............................................................ 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ....................................................................................................... 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....................................................................................................... 3

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................................................ 13

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................... 19, 21

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) ........................................................... 11

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................... 6, 11

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................... 16

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................... passim

*Goldman Sachs Grp. v. AR Teacher Ret.*,
2020 WL 7296815 (U.S. Dec. 11, 2020) ..................................................................... 16

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................................ 11

*Hicks v. Morgan Stanley,*
  *et al.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................................... 3, 6, 21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ................................................................................................. 17

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .......................................................................... 20

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................................... 18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................... 17

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................................... 17

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ........................................................................................ 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................................................... 17

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................... 21

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014) ......................................................................................... 11

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................................................. 10, 13, 20

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ........................................................................... 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................................. 5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................................. 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................................................................... passim

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................................................................ 24

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................ 10, 19, 23

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................................ 10

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................................. 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................................... 22

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................................ 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. 2009) ...................................................................................... 24

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................... 17

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................................... 7, 8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................................................................... 6

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................................... 3, 19, 20, 24

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................................... 5

*Johnson v. Brennan*,
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ...................................................................... 5, 6

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) .............................................................................. 18

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) .................................................................................................. 10

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 4, 8, 11, 21

*McDaniel v. Cty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)..............................................................................................4

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)............................................................................................................4

*Missouri v. Jenkins*,
491 U.S. 274 (1989)..........................................................................................................10

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...............................................................7

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension* Fund,
575 U.S. 175 (2015)..........................................................................................................15

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)....................................................................................22

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ......................................................................................17

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999)........................................................................................9, 10

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..............................................................13

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ............................................................................................2

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...............................................................8, 18

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...............................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................................21

*Too v. Rockwell Medical, Inc.*,
2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020)..............................................................8, 24

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................7

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
775 F. App'x 51 (3d Cir. 2019)........................................................................................16

v

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................................ passim

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................................................... 11

## **Statutes**

15 U.S.C. § 78u-4 ..................................................................................................................... 5, 23

15 U.S.C. § 78-u5 ......................................................................................................................... 15

## **Rules**

Fed. R.  Civ. P. 23 ........................................................................................................................ 16

Court-appointed Lead Counsel, the Rosen Law Firm, P.A. ("Rosen" or "Lead Counsel"), respectfully requests that the Court grant their motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $437,500, on behalf of all Plaintiffs' Counsel,[1] plus interest earned at the same rate as the Settlement Fund. Lead Counsel also seeks reimbursement of: (i) $50,602.43 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $3,000 in total costs and expenses incurred by the Court-appointed Lead Plaintiffs Clinton Atkinson, Nabil Saad and Iuliia Mironova ("Lead Plaintiffs" or "Plaintiffs") directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2]

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $1,750,000 in cash in exchange for the resolution of the Action, represents an excellent result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Lead Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous hurdles in overcoming Defendants' motion to dismiss, and if successful, establishing liability, loss causation, and damages in this Court. The risk of losing was very real, and it was greatly enhanced by the fact that Lead Plaintiffs would be litigating against a corporate

---

[1] Plaintiffs' Counsel refers to Lead Counsel and additional Plaintiffs' counsel, Glancy Prongay & Murray LLP ("GPM").

[2] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement (ECF No. 55-1, the "Stipulation") filed with the Court on September 3, 2020 or the concurrently filed Declaration of Sara Fuks in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Final Certification of the Settlement Class; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fuks Declaration" or " Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to the Fuks Declaration.

1

defendant represented by skilled defense counsel, under the heightened pleading standard of the PSLRA. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").[3]  Moreover, even if Lead Plaintiffs had prevailed at the pleadings stage and won at trial, Plaintiffs faced further risks that the litigated judgment would be appealed, resulting in additional litigation before the Second Circuit Court of Appeals.  Despite these risks, Plaintiffs' Counsel collectively devoted more than 392 hours to the Action, all on a contingency basis with no guarantee of ever being paid.

Lead Counsel believes that an attorneys' fee award of 25% properly reflects the many significant risks taken by counsel, as well as the excellent result achieved.  When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and expense reimbursements requested by Lead Plaintiffs and their counsel are likewise reasonable in amount, and such costs and expenses were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too should be approved.

## II.      FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Declaration of Sara Fuks in Support of (I) Lead Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plan of Allocation and Final Certification of the Settlement Class, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fuks Declaration" or "Fuks Decl.") is an integral part of

---

[3] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action (¶¶17-34); the nature of the claims asserted (¶¶15-16); the negotiations leading to Settlement (¶¶26-28); the risks and uncertainties of continued litigation (¶¶36-48); and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class (¶¶22-35).[4]

## III.   ARGUMENT

### A.   The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

"The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.* at *2; *see also Hicks v. Morgan Stanley, et*

---

[4] As stated in Lead Plaintiffs' Preliminary Approval Motion (ECF No. 54 at n. 4), prior to their appointment as Lead Plaintiffs, Nabil Saad and Iuliia Mironova were represented by GPM. The Court declined to appoint GPM as co-lead counsel. Subsequent to the Court's order appointing the Rosen Law Firm as Lead Counsel, GPM performed work on the case under the supervision and direction of Lead Counsel. Lead Counsel ensured that no work was duplicated. ¶21 n.5. Further, neither Lead Counsel nor GPM incurred any travel costs, and Lead Counsel ensured that no unnecessary costs were incurred. *Id.*

3

*al.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them, an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All these elements are present here: Lead Counsel's efforts have conferred a substantial benefit ($1,750,000 in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group—the Settlement Class Members. *Id.* Accordingly, the Court should award attorneys' fees from the common fund.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]"). Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method. *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011). "In contrast, the lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

Use of the percentage method does not, however, render lodestar irrelevant.  Rather, part

of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" (*id.*), or "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at *14-15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10 (similar).

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The 25% fee requested by Lead Counsel is an appropriate fee request in this case and is in the range of, if not below, fee requests that have been awarded in the Second Circuit in comparable securities class actions. *See e.g.*, *In re TV Azteca S.A. DE C.V., Sec. Litig.*, No. 1:04–cv–546 (JES), (slip op. at 8) (S.D.N.Y. July 19, 2007) (awarding 25% of $1.2 million settlement fund) (Ex.8A); *In re Shengdatech, Inc. Sec. Litig.*, No. 1:11-cv-01918 (LGS) (ECF No. 165) (S.D.N.Y. Sept. 25,

6

2015) (awarding 25% of $2,150,000 settlement) (Ex. 8B); *Lewy v. Skypeople Fruit Juice, Inc.*, No. 1:11-cv-02700 (KPC) (ECF No. 139) (granting 25% of $2.2 million) (Ex. 8C); *see also Patel v. L-3 Communications Holdings, Inc.,* 1:14-cv-060308 (VEC) (S.D.N.Y. Aug. 17, 2017) (ECF No. 671) (awarding 25% of $34,500,000 settlement fund) (Ex. 8D).[5]

Indeed, this Court, and other courts in the District, have routinely awarded more than 25% in securities class action settlements.[6]  *See, e.g.*, *City of Austin Police Retirement Sys. v. Kinross Gold Corp.*, 1:12-cv-01293 (VEC) (S.D.N.Y. Oct. 15, 2015) (ECF No. 206) (awarding 30% of $33,000,000 gross settlement fund) (Ex. 8H); *In re IDreamSky Tech. Ltd. Sec. Litig.*, No. 15-cv-02514 (Ex. 8I), (S.D.N.Y. April 6, 2018) (ECF No. 111) (awarding one-third of $4.15 million) (Ex. 8I); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *In re Akari Therapeutics PLC Securities Litigation*, Case No. 1:17-cv-03577 (KPF) (S.D.N.Y. Nov. 28, 2018) (ECF No. 106) (approving attorneys' fees of one-third of $2,700,000 settlement) (Ex. 8J);

---

[5] *See also Montoya, et al. v. Mamma.com, Inc. et al.*, No, l:05–cv–02313 (HB), (slip op. at 8 (S.D.N.Y. July 13, 2007) (awarding 25% of $3.15 million settlement fund); *In re Agria Corp. Sec. Litig.*, No. 1:08-cv-03536 (WHP) (S.D.N.Y. June 7, 2011) (ECF No. 94) (awarded 25% of $3.75 million recovery, plus expenses) (Ex. 8E); *Munoz v. China Expert Tech., Inc.*, No. 07-cv-10531 (AKH) (S.D.N.Y. Jan. 10, 2014) (ECF No. 268-1) (awarding 25% of $4.2 settlement) (Ex. 8F).

[6] *Levine* v. *Atricure, Inc.*, No. 1:06-cv-14324 (RJH) (ECF No. 85), slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 8G); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *24 (S.D.N.Y. Nov. 8, 2010) (recognizing that "awards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases") (citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 287 settlements ranging from less than $1 million to $50 million, "the median turns out to be one-third")).

*In re Molycorp, Inc. Sec. Litig.*, No. 13-cv-5697 (PAC) (S.D.N.Y. June 15, 2017) (ECF No. 95) (awarding 30% of $1.25 million settlement fund) (Ex. 8K); *Singh v. Tri-Tech Holding, Inc.*, 13-cv-09037 (KMW) (S.D.N.Y. Oct. 16, 2015) (ECF No. 60) (awarding 33.33% of $975,000 settlement fund) (Ex. 8L); *In re China Ceramics Co. Ltd. Sec. Litig.*, No. 14-cv-04100 (VSB) (S.D.N.Y. April 22, 2016) (ECF No. 42) (awarding 33.33% of $850,000 settlement fund) (Ex. 8M); *In re ForceField Energy Sec. Litig.*, No. 15-cv-03020 (NRB) (S.D.N.Y. Feb. 26, 2018) (ECF No. 252) (awarding 33.33% of $414,500 settlement fund) (Ex. 8N).

Moreover, recognizing the importance of efficient and effective advocacy, courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly after, and where no or very limited discovery had been obtained as a result of the PSLRA discovery stay. *See e.g.*, *Too v. Rockwell Medical, Inc.*, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) (awarding 33⅓% of $3.7 million settlement fund prior to formal discovery); *Maley*, 186 F. Supp. 2d at 370 (awarding 33.3% of $11.5 million, representing a 4.65 multiplier, where settlement was reached while motions to dismiss were pending); *In re TeleTech Litig.*, No. 1:08-cv-00913 (LTS) (ECF No. 82) (S.D.N.Y. June 11, 2010) (awarding 30% of $11 million settlement reached before motion to dismiss was filed) (Ex. 8O); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620 (VM) (ECF No. 49 at 6) (S.D.N.Y. March 27, 2020) (awarding 33.3% of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss) (Ex. 8P); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million, where settlement was reached while motion to dismiss was pending).[7]

---

[7] *See also In re L.G. Philips LCD Co. Sec. Litig.,* No. 1:07-cv-00909 (RJS) (ECF No. 10), slip op. at ¶3 (S.D.N.Y. Mar. 17, 2011) (Ex. 8Q); (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04-cv-1773 (DAB) (ECF No. 170), slip op. at ¶16 (S.D.N.Y. July

Here, Plaintiffs' Counsel developed a unique theory of the case, gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims through an extensive investigation, consultation with experts, and arms'-length discussions with Defendants' Counsel following the filing of the motion to dismiss, and achieved a highly favorable settlement long before trial. Plaintiffs' Counsel's ability to effectively build a solid case from essentially scratch, and to then negotiated the Settlement, sparing the Settlement Class the significant risks Lead Plaintiffs would have faced at each stage of the litigation—including motion to dismiss briefing, class certification, on summary judgment, at trial, and on appeal—not to mention the years the Settlement Class would have had to wait for a recovery, if any. Under such circumstances, Plaintiffs' Counsel should be rewarded for their efficient and effective advocacy.

Indeed, one of the benefits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel have developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the benefits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In sum, Lead Counsel's request for 25% in attorneys' fees is appropriate given the facts of this case and is consistent with, if not below, fees awarded in the Second Circuit for comparable securities class actions.

> **2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of**

---

18, 2007) (awarding 27% of $100 million, where settlement was reached while motion to dismiss was pending) (Ex. 8R).

the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award.  *See Goldberger*, 209 F.3d at 50.  The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).  "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460); *see also Flag Telecom*, 2010 WL 4537550, at \*26 ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Plaintiffs' Counsel collectively devoted a total of 392.2 hours to the prosecution of this Action, resulting in a lodestar of $304,016.80.  ¶74. Based on a 25% fee (equal to $437,500), Plaintiffs' Counsel's lodestar of $304,016.80 yields a multiplier of 1.44.  This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable."); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3 was "not atypical for similar fee-

10

award cases").[8]

In sum, a lodestar cross-check confirms that the requested fee award is appropriate and is within the range of what courts in this Circuit regularly award in class actions such as this one. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.   Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.   Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Fuks Declaration, Plaintiffs' Counsel's work on this matter included, among other things:

---

[8] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (stating that courts routinely award lodestar multipliers of "between four and five"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable.").

11

- conducting a comprehensive investigation into the allegedly wrongful acts, which included, among other things, (a) a review and analysis of Correvio's SEC filings, Defendants' public statements, news articles concerning Correvio, reports and transcripts of Correvio's investor calls, FDA briefing documents and SPECTRUM study protocols, (b) working with a private investigator on an international investigation to identify and conduct numerous interviews with former employees and other potential witnesses with relevant information, and (c) consulting with damages and FDA experts (¶22);

- researching and preparing a detailed 96-page Amended Complaint based on this investigation (¶23);

- reviewing and analyzing Defendants' motion to dismiss the Amended Complaint (¶25);

- engaging in negotiations regarding the terms of the proposed Settlement (¶¶26-27);

- drafting the Stipulation and related settlement documents (¶28);

- working with Lead Plaintiffs' damages consultant to prepare the proposed Plan of Allocation (¶¶62-66);

- drafting the preliminary approval motion papers (¶29); and

- overseeing the implementation of the notice process (¶32).

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proofs of Claim, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at \*10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this case by Plaintiffs' Counsel to obtain the

12

$1,750,000 Settlement confirms that the fee request is reasonable.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees.  *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis.").  This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *Flag Telecom*, 2010 WL 4537550, at *27.[9]  This case was no different.

From the outset of this Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and thus funds were available to compensate staff and to cover the considerable costs that a case such as this requires.  ¶81.  Plaintiffs' Counsel

---

[9] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

13

received no compensation during the litigation, and they advanced and incurred $50,602.43 in expenses in prosecuting this Action for the benefit of the Settlement Class. *Id.* Had Lead Counsel not achieved the Settlement, this significant investment of time and money would have been lost.

Although Lead Counsel believes that Lead Plaintiffs' claims are meritorious and remain confident in their ability to prove their claims and rebut Defendants' arguments, Lead Counsel also recognizes that there were a number of substantial risks in the litigation from the outset and that Lead Plaintiffs' ability to succeed at the motion to dismiss stage and then at trial and obtain a substantial judgment was far from certain. As discussed below and in the Fuks Declaration, there were substantial risks here with respect to establishing both liability and damages in the Action. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. ¶¶37-48; *see also Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

For example, although Lead Counsel believes that the Complaint adequately alleged the elements of falsity and scienter, there can be no doubt that Lead Plaintiffs and the Settlement Class faced significant hurdles to defending those allegations both at the pleadings stage and then, if Lead Plaintiffs survived Defendants' motion to dismiss, at summary judgment and trial. As set forth in more detail at ¶¶15-16 in the Fuks Declaration, the core of Lead Plaintiffs' case is that Defendants made false and misleading statements and omitted material facts necessary to render statements concerning Correvio's Resubmitted NDA not misleading. ¶15. As explained more fully at ¶37 of the Fuks Declaration, Defendants raised a number of arguments and defenses to Lead Plaintiffs' claims in their motion to dismiss, which if the case proceeded beyond the

14

pleadings, Defendants also may have raised at summary judgment (and then trial).  ¶42-43.

For example, Defendants argued that many of the challenged statements are forward-looking under 15 U.S.C. §§78-u5(c)(2)(3) and were accompanied by meaningful cautionary language warning investors of the risks involved with seeking FDA approval.  ¶37.  Defendants also argued that all of the statements regarding the likelihood of FDA approval were inactionable corporate optimism, and that the challenged statements interpreting the SPECTRUM study data are inactionable opinion statements under the Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension* Fund, 575 U.S. 175 (2015).  *Id.*  Whether Lead Plaintiffs would have prevailed in response to these arguments at the motion to dismiss stage was far from certain especially in light of the strict pleading standards of the PSLRA.  *Id.*

Moreover, even if Lead Plaintiffs were successful at the pleadings stage, they faced substantial burdens prevailing on a class certification motion and summary judgment motions. Plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification.  Success was not a forgone conclusion; nor was a quick resolution of the issue.  Indeed, the class certification standard as applied by the Second Circuit is currently under review by the United States Supreme Court in the case of *Goldman Sachs Grp. v. AR Teacher Ret.*, 2020 WL 7296815, at *1 (U.S. Dec. 11, 2020). ¶40.  And assuming, *arguendo*, Lead Plaintiffs certified the class, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f)'s interlocutory appeal provision.  ¶¶38-39; *see Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019) (Plaintiffs' Counsel certified class followed by 15 month interlocutory appeal at Third Circuit).

Even assuming that Lead Plaintiffs successfully defeated Defendants' motion to dismiss

15

and surmounted all the other legal and factual obstacles to successfully establish liability, Lead Plaintiffs would still face considerable risks in establishing loss causation and damages.  ¶45; *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Although Lead Plaintiffs would have argued that the declines in Correvio's stock price, when the truth was partially revealed on December 6, 2019 and then fully revealed on December 10, 2019, were attributable to Defendants' false and misleading statements/material omissions, Defendants would have likely argued that Lead Plaintiffs could not rebut evidence that a significant percentage of the stock drops were attributable to other factors.  ¶45.

Simply put, the parties would have likely held extremely disparate views on loss causation and damages, and had Defendants' likely arguments been accepted in whole or part, they would have dramatically limited any potential recovery.  Lead Plaintiffs would have to incur considerable expense to pay for experts to attempt to counter these arguments, and even then, success would be far from assured, particularly as Defendants would hire their own experts to opine on their positions.  *See In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Even if Lead Plaintiffs had overcome the substantial hurdles of class certification, summary judgment and trial, success at trial would not have guaranteed a recovery larger than the $1,750,000 Settlement.  *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation

16

grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at \*20-\*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (reversing verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

Despite the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at \*27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *Taft*, 2007 WL 414493, at \*10; *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at \*8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's

17

perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at \*9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). Such was the case here.

As noted above and in the Fuks Declaration, the litigation raised a number of complex questions concerning falsity, and Defendants' scienter, as well as liability and loss causation issues that would have required extensive efforts by Lead Counsel and consultation with experts to bring to resolution. ¶¶37-48. To build the case, Lead Counsel were, among other things, required to: (i) conduct an extensive factual investigation, which included an international investigation and interviews with former Correvio employees in the U.S. and Europe, significant time consulting with FDA and damages experts, and a broad review of all publicly available information concerning Defendants, including FDA briefing documents and SPECTRUM study protocols; (ii) preparing the 96-page Amended Complaint; and (iii) engaging in negotiations regarding the terms of the proposed Settlement. ¶¶72,79. If the Action had not been settled, there would have been copious amounts of additional motion practice, including—if Lead Plaintiffs were successful at the pleadings stage—a class certification motion, summary judgment motions, and *Daubert* motions; discovery, including depositions of fact and expert witnesses, some of which would have taken place overseas; a trial; post-trial motion practice; and most likely appeals.

Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. ¶¶79-80; *see City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter

18

involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel and additional Plaintiffs' Counsel is another important factor that supports the reasonableness of the requested fee. ¶84.  Lead Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *See Veeco*, 2007 WL 4115808, at *7; *Global Crossing*, 225 F.R.D. at 467.  The recovery here represents more than 5% of likely recoverable damages. ¶49.  This recovery exceeds the 2020 median ratio of settlements to investor losses, which was 1.7%. ¶85 (citing NERA Report at 20, Fig. 16).[10]  Lead Counsel respectfully submit that the quality of their efforts in the litigation to date, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate the Settlement. ¶84; Exs. 2A, 3A (Rosen and GPM firm resumes).

Courts have also recognized that the quality of the opposition faced by Plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. ¶86; *see, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008).  Here, Defendants were represented Skadden Arps Slate, Meagher & Flom LLP, an accomplished law firm with substantial securities

---

[10] Ex. 6.

19

class action litigation experience, that vigorously represented the interests of its clients throughout this Action. ¶86. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, ultimately resulted in the favorable Settlement. *Id.* Consequently, this factor militates in favor of the requested fee.

### 5. The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring a review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Sec. III.C.1 above, the requested 25% fee is well within the range of, if not below, percentage fees that courts in the Second Circuit have awarded in comparable cases. ¶87. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6. Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts

20

should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9 ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. ¶88; *see In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### 7.    The Reaction of the Class to Date Supports the Requested Fee

The overwhelmingly positive reaction of the Settlement Class to date also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). Through April 6, 2021 the Claims Administrator had disseminated the Postcard to 9,507 potential Settlement Class Members and their nominees informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund. ¶89; Ex. 1 ¶6. Although the time to object does not expire until April 23, 2021, to date, not a single objection has been received. Ex. 1 ¶12-13. The lack of objections is "strong evidence" of the reasonableness of the

fee request.  *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).[11]

> **E.      Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Lead Counsel also requests reimbursement of $50,602.43 in expenses incurred while prosecuting the Action.  In support of this request, Lead Counsel and additional Plaintiffs' Counsel have submitted separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel.  *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well-accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").  A significant portion of the expenses in this case were incurred for professional services rendered by Lead Plaintiffs' investigator and FDA and damages consultants, and the remaining expenses are attributable to the costs of filing fees and other incidental expenses incurred during the course of the litigation.  Exs. 2, Table B, 3, Table B.  These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action.  As such, they should be reimbursed.  *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the [s]ettlement fund.").  Additionally, no objections to the

---

[11] Should any objections be received, Lead Counsel will address them in their reply papers.

expense request have been received, and the amount requested is below the $60,000 limit disclosed in the Postcard Notice and Notice.  Bravata Decl., Ex. 1 at Ex. C (Notice); Ex. 1 at Ex. A (Postcard Notice).  Accordingly, Lead Counsel respectfully request payment for these expenses.

**F.      Lead Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of litigation expenses, Lead Counsel also seeks reimbursement of $1,000 for Clinton Atkinson, $1,000 for Iuliia Mironova and $1,000 for Nabil Saad, for a total of $3,000 in costs and expenses incurred by Lead Plaintiffs.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs dedicated time to the successful prosecution of this Action by, among other things: providing counsel with information concerning their respective transactions in Correvio securities; reviewing the initial complaint and Amended Complaint; participating in regular discussions with counsel concerning the prosecution of the Action; discussing the proposed Settlement with counsel in connection with evaluating and approving the proposed Settlement; and reviewing the settlement documentation.  Ex. 4 at ¶5; Ex. 5 at ¶5.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009); *see also In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

Additionally, the Notice and Postcard Notice informed Settlement Class Members that

23

Lead Plaintiffs would request up to $1,000 each in reimbursement for their costs and expenses, and there have been no objections thereto.  Accordingly, Lead Counsel respectfully requests that the Court grant Lead Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class."  *Marsh & McLennan*, 2009 WL 5178546, at *21; *see L.G. Philips LCD*, No. 07-cv-00909, Ex. 8Q at 1 (awarding lead plaintiff $1,500 of $18 million settlement, where settlement was reached while motion to dismiss was pending); *Rockwell*, 2020 WL 1026410, at *3 (awarding $3,000 to each of the lead plaintiffs of $3.7 million settlement fund, where case settled without formal motion to dismiss briefing and prior to discovery); *Ubiquiti*, No. 18-cv-01620, (Ex. 8P at 6) (awarding lead plaintiff $5,000 of $15 million settlement, where settlement was reached prior to the filing of a motion to dismiss); *see also Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

## IV.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the motion.

DATED:   New York, New York
April 9, 2020

By:  *s/ Sara Fuks*

Sara Fuks

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen
Sara Fuks
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

24

lrosen@rosenlegal.com
sfuks@rosenlegal.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke
Jennifer M. Leinbach
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
kwolke@glancylaw.com
jleinbach@glancylaw.com

*Additional Counsel for Lead Plaintiffs and the Settlement Class*

25